UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

**FILED**

JUL 13 2015

U.S. DISTRICT COURT
EASTERN DISTRICT OF MO
ST. LOUIS

| | |
|---|---|
| IN THE MATTER OF AN APPLICATION OF THE UNITED STATES OF AMERICA FOR A WARRANT TO OBTAIN RECORDS, LOCATION INFORMATION, INCLUDING PRECISION LOCATION INFORMATION, CELL SITE INFORMATION, AND OTHER SIGNALING INFORMATION ASSOCIATED WITH THE CELLULAR TELEPHONE HAVING THE NUMBERS (314) 371-9798. | No. 4:15MJ01045 JMB<br><br>**FILED UNDER SEAL** |

### AFFIDAVIT

Daniel Sanders, being duly sworn, deposes and says that he is a Task Force Officer with the Drug Enforcement Administration (DEA), duly appointed according to law and acting as such.

### Introduction

I am a Task Force Officer with the Drug Enforcement Administration, duly appointed according to law and acting as such since January of 2015, currently assigned to the St. Louis Division. Prior to being appointed as a Task Force Officer, I was a sworn police officer for approximately four years. During my tenure with DEA and as sworn officer, I have been assigned to conduct investigations of several complex investigations with drug-trafficking organizations dealing in heroin, cocaine, marijuana and other controlled substances. These investigations have resulted in the seizure of heroin, methamphetamine, marijuana, and other controlled substances. I am familiar with and have utilized normal methods of investigation, including, but not limited to, visual surveillance, questioning of witnesses, the use of search and

arrest warrants, the use of informants, the use of pen registers, the utilization of undercover agents and the use of court-authorized wire intercepts.

The facts alleged in this affidavit come from my own investigation, my training and experience, and information obtained from other investigators and witnesses. As this affidavit is submitted for the limited purpose of establishing probable cause to locate and monitor the location of a cellular telephone as part of a criminal investigation, it does not set forth all of the my knowledge regarding this matter.

Upon information and belief, and as explained in greater detail below, the SPRINT cellular telephone bearing number **(314) 371-9798** (hereinafter the "**subject cellular telephone**") has been used, and is presently being used, in connection with the commission of offenses involving ongoing violations of Title 21, United States Code, Sections 846 and 841(a)(1) (hereinafter referred to as "the subject offenses"), by Jermaine Terrell JACKSON, and others known and unknown.

The present affidavit is being submitted in connection with an application of the Government for a warrant and order authorizing agents/officers of the investigative agency(ies) to obtain location information, including precision location information, cell site location information, and other signaling information, including pen register information from a cell site simulator, in an effort to locate and monitor the location of the **subject cellular telephone**.

Your affiant further states that there is probable cause to believe that the location information associated with the **subject cellular telephone** will lead to evidence of the aforementioned subject offenses as well as to the identification of individuals who are engaged in the commission of those criminal offense and related crimes.

2

## Investigation and Probable Cause

On June 16, 2015, investigators from the Drug Enforcement Administration-St. Louis Field Office received information from a confidential source (hereinafter referred to as "CS") stating that Jermaine Terrell JACKSON receives multiple ounces to pound quantities of heroin from unknown sources in multiple states and distributes the heroin throughout the St. Louis metropolitan area.   The CS knows JACKSON through a mutual friend.   The CS further stated that he/she had an in-person conversation on June 16, 2015, with JACKSON in which JACKSON informed the CS that he was able to supply the CS with as much heroin as the CS could afford.   JACKSON informed the CS that he would be receiving a shipment later that week, and provided the CS with the cellular telephone number **(314) 371-9798** (the **subject cellular telephone**) and instructions to call him (JACKSON) when the CS was ready to purchase heroin.

Investigators subpoenaed phone toll records for the **subject cellular telephone** from May 1, 2015, through July 5, 2015.   Phone toll analysis during this time period shows that the **subject cellular telephone** had multiple phone calls and/or text messages to Michigan, Kansas, Illinois, Arkansas, Georgia, Maryland, Wisconsin, Tennessee, California, Oklahoma, Louisiana, Canada, New York, Colorado, Pennsylvania, Massachusetts, Nevada, Florida, and Arkansas, as well as multiple local numbers.   A computer check through DEA indices revealed that several of the out-of-state phone numbers in contact with the **subject cellular telephone** have been associated with high-level drug trafficking cases around the country.   For example, toll records show the **subject cellular telephone** has contacted cellular telephone number (773) 299-7500 seven times since May of 2015.   [Agent's note: "773" is a Chicago-based area code, and Chicago is a source city for heroin.]   The 773-299-7500 phone number was involved in a DEA investigation in

3

October of 2013, in which two separate traffic stops performed near the Indiana/Ohio border, resulted in the seizure of several kilograms of cocaine. Additionally, the **subject cellular telephone** contacted cellular telephone number (508) 623-2135 twice during the same period. [Agent's note: "508" is a Boston, Massachusetts, area-based area code, and this area is also a source city for heroin.] The (508) 623-2135 phone number was also involved in another DEA investigation during March of 2015 in which the target of that investigation contacted the above number ((773) 299-7500) several times just prior to a controlled purchase of narcotics. Investigators believe this level of communication with out-of-state phone numbers is consistent with drug-trafficking operations.

Investigators have also reviewed databases and documents related to JACKSON's criminal history which reveal that on or about October 8, 2010, the District Court for Stillwell, Oklahoma, sentenced JACKSON to a Suspended Execution of Sentence (SES) for a term of sixty (60) months for Distribution of a Controlled Substance-Including Possession with Intent (Cause number CF-2010-00433). JACKSON also has multiple arrests for various weapons offenses, including Assault-1st Degree and Burglary in Missouri and Illinois. In addition, since 2009, JACKSON has been arrested for Possession and/or Distribution of a Controlled Substance four times.

At the direction of law enforcement, the CS attempted two calls to **subject cellular telephone** on July 9, 2015. JACKSON did not answer the calls; however, a personal recording that states "Jermaine" is heard when voicemail is reached. These attempted calls were recorded by law enforcement. Prior to making the calls, the CS had informed the investigative team on July 6, 2015, the CS had learned that he (JACKSON) would be in Indianapolis for a couple days so the CS did not expect JACKSON to answer the calls. The CS stated he/she would let the investigative team know when JACKSON called him/her back.

4

Your affiant believes the requested information associated with **the subject cellular telephone** is vital to the investigation to assist in locating JACKSON, other member of the JACKSON Drug-Trafficking Organization (DTO), as wells as JACKSON's source of supply. The ability to monitor JACKSON's movements regarding his travel to and from St. Louis, Missouri, metropolitan area in will be crucial in furthering this investigation.    Although investigators would not rely entirely on the electronic data in lieu of physical surveillance, such data would allow investigators to readily locate the device, identification of DTO "stash" houses and DTO co-conspirators, potentially resulting in the seizure of drug shipments and/or drug proceeds which can be used to assist with the prosecution of the JACKSON DTO.

The investigation has clearly demonstrated that the **subject cellular telephone** is being used in connection with the commission of offenses involving ongoing violations of Title 21, United States Code, Sections 846 and 841(a)(1) (the subject offenses).    It is critical that the investigative team be able to locate and monitor the movements of the **subject cellular telephone** thereby assisting in the identification of the co-conspirators and the seizure of narcotics.    Your affiant believes that the requested authorization would be a valuable asset in achieving the overall goals of the investigation.

### Investigative Considerations and Techniques

Based on my knowledge, training, and experience, as well as information provided by investigators with specialized experience relating to cellular telephone technology, I am aware of the following facts and considerations:

A.    Wireless phone providers typically generate and retain certain transactional information about the use of each telephone call, voicemail, and text message on their system. Such information can include log files and messaging logs showing all activity on a particular

5

account, such as local and long distance telephone connection records, records of session times and durations, lists of all incoming and outgoing telephone numbers or other addressing information associated with particular telephone calls, voicemail messages, and text or multimedia messages.

B.    Wireless phone providers also typically generate and retain information about the location in which a particular communication was transmitted or received.   For example, when a cellular device is used to make or receive a call, text message or other communication, the wireless phone provider will typically generate and maintain a record of which cell tower(s) was/were used to process that contact.   Wireless providers maintain information, including the corresponding cell towers (i.e., tower covering specific geographic areas), sectors (i.e., faces of the towers), and other signaling data as part of their regularly conducted business activities. Typically, wireless providers maintain records of the cell tower information associated with the beginning and end of a call.

C.    Because cellular devices generally attempt to communicate with the closest cell tower available, cell site location information from a wireless phone provider allows investigators to identify an approximate geographic location from which a communication with a particular cellular device originated or was received.

D.    Wireless providers may also retain text messaging logs that include specific information about text and multimedia messages sent or received from the account, such as the dates and times of the messages.   A provider may also retain information about which cellular handset or device was associated with the account when the messages were sent or received.   The provider could have this information because each cellular device has one or more unique identifiers embedded inside it.   Depending upon the cellular network and the device, the

6

embedded unique identifiers for a cellular device could take several different forms, including an Electronic Serial Number ("ESN"), a Mobile Electronic Identity Number ("MEIN"), a Mobile Identification Number ("MIN"), a Subscriber Identity Module ("SIM"), an International Mobile Subscriber Identifier ("IMSI"), or an International Mobile Station Equipment Identity ("IMEI"). When a cellular device connects to a cellular antenna or tower, it reveals its embedded unique identifiers to the cellular antenna or tower in order to obtain service, and the cellular antenna or tower records those identifiers.

E.     Wireless providers also maintain business records and subscriber information for particular accounts. This information could include the subscriber's full name and address, the address to which any equipment was shipped, the date on which the account was opened, the length of service, the types of service utilized, the ESN or other unique identifier for the cellular device associated with the account, the subscriber's Social Security Number and date of birth, all telephone numbers and other identifiers associated with the account, and a description of the services available to the account subscriber. In addition, wireless providers typically generate and retain billing records for each account, which may show all billable calls (including outgoing digits dialed). The providers may also have payment information for the account, including the dates and times of payments and the means and source of payment (including any credit card or bank account number).

F.     Providers of cellular telephone service also typically have technical capabilities that allow them to collect and generate more precise location information than that provided by cell site location records. This information is sometimes referred to as E-911 phase II data, GPS data or latitude-longitude data. In the Eastern District of Missouri, such information is often referred to as "precision location information" or "PLI" data. E-911 Phase II data provides

7

relatively precise location information about the cellular telephone itself, either via GPS tracking technology built into the phone or by attempting to triangulate the device's signal using data from several of the provider's cell towers. Depending on the capabilities of the particular phone and provider, E-911 data can sometimes provide precise information related to the location of a cellular device.

In addition to records and signaling information from cellular providers, it is also sometimes possible to locate and monitor the movements of a cellular device by directly monitoring signals from the device itself. Such monitoring is accomplished by using a specific form of pen register, which is referred to herein as a cell-site simulator. In particular, a cell-site simulator mimics, to a degree, the activities of a cell tower. Once the general location of the **subject cellular telephone** is identified (e.g., using cell site location records or E-911/precision location information), a cell-site simulator can be used in the vicinity of the **subject cellular telephone** to detect radio signals that are emitted automatically at the time the **subject cellular telephone** is turned on, and periodically thereafter as long as the phone remains on, regardless of whether a call is being made, to communicate with the cellular infrastructure, including cell towers. These signals contain identifying numbers for the telephone (*e.g.*, the telephone number and Electronic Serial Number ("ESN") or International Mobile Subscriber Identification ("IMSI") number). The investigative agency(ies) can use these cell-site simulator techniques to attempt to identify the location from which the **subject cellular telephone** is operating. The techniques do not intercept any content of communications, but rather search for signals emitted by the **subject cellular telephone**, which are identified through its identifying numbers (which are already known to law enforcement through other means). The cell site simulator may cause a temporary disruption of services. Once the **subject cellular telephone's** signals are identified (typically,

8

through the use of a cell-site simulator, which can be used only when it is in the general proximity of the **subject cellular telephone**), the strength of the signal emitted by the **subject cellular telephone** can be analyzed to ascertain the general direction and location of the signal, which can assist in identifying the general location from which the **subject cellular telephone** is operating. After the location is determined, data not associated with the operation is deleted.

In order to locate the **subject cellular telephone** and monitor the movements of the phone, the investigative agency(ies) may need to employ one or more techniques described in this affidavit and in the application of the government.   The investigative agency(ies) may seek a warrant to compel the SPRINT, any telecommunication service providers reflected in Attachment 1 (herein incorporated by reference), and any other applicable service providers, to provide precision location information, including Global Position System information (if available), transactional records, including cell site location information, and pen register and trap-and-trace data.   The investigative agency(ies) may also install and use its own pen register and trap-and-trace devices, including a cell-site simulator, in an effort to locate and monitor the movements of the **subject cellular telephone**.

None of the investigative techniques that may be employed as a result of the present application and affidavit require a physical intrusion into a private space or a physical trespass. Electronic surveillance techniques such as pen register and cell site location monitoring typically have not been limited to daytime use only.   Furthermore, the criminal conduct being investigated is not limited to the daytime.   Therefore, the fact that the present application requests a warrant based on probable cause should not limit the use of the requested investigative techniques to daytime use only.   Accordingly, the investigative agency(ies) requests the ability to employ these investigative techniques at any time, day or night.

9

The monitoring of the location of the **subject cellular telephone** by one of the methods described herein will begin within ten (10) days of the date of issuance of the requested Warrant and Order.

### Conclusion

Based on the above information, there is probable cause to believe that the **subject cellular telephone** is being used to promote and facilitate a conspiracy to distribute narcotics and the requested authorization would provide relevant evidence of the conspiracy. There is likewise probable cause to conclude that locating and monitoring the movements of the **subject cellular telephone** will lead to the relevant evidence concerning violations of Title 21, United States Code, Sections 846 and 841(a)(1).

07/13/2015
_____
DATE

_____
DANIEL SANDERS
Task Force Officer
Drug Enforcement Administration

Sworn to and subscribed before me this  13½  day of July, 2015.

_____
JOHN M. BODENHAUSEN
UNITED STATES MAGISTRATE JUDGE
Eastern District of Missouri

10

## LIST OF TELECOMMUNICATION SERVICE PROVIDERS

### SPRINT
and

| | | | |
|---|---|---|---|
| 01 Communications | Empire Paging | MCI Worldcom | Smart Beep Paging |
| Access Line Communication | Ernest Communications | Metro PCS | Smart City Telecom |
| ACN Communications | Echelon Telecommunications | Metro Teleconnect | Socket Telecom |
| ACS | EZ Talk Communications | Mid-Atlantic | South Central Bell |
| Aero Communications, Inc. (IL) | FDN Communications | Midvale Telephone Exchange | Sprint |
| Afford A Phone | Fibernit Comm | Midwest Wireless | Sprint Spectrum, L.P. |
| Airvoice Wireless | Florida Cell Service | Millington Telephone | SRT Wireless |
| Alaska Communications | Florida Digital Network | MLM Telecommunications | Star Telephone Company |
| Alhambra-Grantfx Telephone | Focal Communications | Mobile Communications | Start Wireless |
| AmeriTel | Frontier Communications | Mound Bayou Telephone Co. | Sugar Land Telephone |
| AOL Corp. | Gabriel Comm | Mountain Bell | Sure West Telephone Company |
| Arch Communication | Galaxy Paging | Mpower Communications | Talk America |
| AT&T | Global Communications | Navigator | Tele Touch Comm |
| AT&T Mobility | Global Crossing | Telecommunications | Telecorp Comm |
| Bell Aliant | Global Eyes Communications | NE Nebraska Telephone | Telepak |
| Big River Telephone | Global Naps | Netlink Comm | Telistire |
| Birch Telecom | Global Rock Network | Network Services | Telnet Worldwide |
| Blackberry Corporation | Grafton Telephone Company | Neustar | Tex-Link Comm |
| Brivia Communications | Grand River | Neutral Tandem | Time Warner Cable |
| Broadview Networks | Grande Comm | Nex-Tech/United Wireless | T-Mobile |
| Broadvox Ltd. | Great Plains Telephone | Nexus Communications | Total Call International |
| Budget Prepay | Harrington Telephone | NII Comm | Tracfone Wireless |
| Bulls Eye Telecom | Harrisonville Telephone Co. | North Central Telephone | Trinity International |
| Cable Vision | Heartland Communications | North State Comm | Triton PCS Company |
| Call Wave | Hickory Telephone | Northcoast Communications | U-Mobile |
| Cbeyond Inc. | Houston Cellular Telephone | Novacom | Unicel Cellular |
| CCPR Services | Huxley Communications | Ntera | United On-Line |
| Cellco Partnership, | iBasis | N-Teleos Wireless | United States Cellular Corp. |
| d/b/a Verizon Wireless | IDT Corporation | NTS Communications | United Telephone of MO |
| Cellular One | Illinois Consolidated | Oklahoma City SMSA | US Cellular |
| Cellular South | Communications | ONSTAR | US Communications |
| Centennial Wireless | Illinois Valley Cellular | Optel Texas Telecom | US LEC |
| CenturyLink | Insight Phone | Orion Electronics | US Link |
| Champaign Cellular | Integra | PacBell | US West Communcations |
| Charter Communications | Iowa Wireless | PacWest Telecom | USA Mobility |
| Chickasaw Telephone | IQ Telecom | PAETEC Communications | VarTec Telecommunications |
| Choctaw Telephone Company | J2 Global Communications | Page Plus Communications | Verisign |
| Choice Net Comm. | Leap Wireless International | Page Mart, Inc. | Verizon Telephone Company |
| Cimco Comm | Level 3 Communications | Page Net Paging | Verizon Wireless |
| Cincinnati Bell | Level One | Panhandle Telephone | Viaero Wireless |
| Cinergy Communications | Local Links Communications | Peerless Network | Virgin Mobile |
| Citizens Utilities | Locus Communications | Pineland Telephone | Vonage Holdings |
| Clear World Communication | Logix Communications | PhoneTech | Wabash Telephone |
| Com-Cast Cable Comm. | Longlines Wireless | PhoneTel | Weblink Wireless |
| Comm South Companies | Los Angeles Cellular | Preferred Telephone | Western Wireless |
| Commercial Communications | Madison River | Priority Communications | Westlink Communications |
| Consolidated Communications | Communications | Puretalk | Windstream Communications |
| Conversent Communications | Madison/Macoupin Telephone | RCN Telecom | WinStar Communications |
| Cox Communications | Company | RNK Telecom | Wirefly |
| Cricket Wireless | Mankato Citizens Telephone | QWEST Communications | WISPNET, LLC |
| Custer Telephone Cooperative | Map Mobile Comm | Sage Telecom | World Comm |
| DBS Communications | Marathon Comm | SE All-Tel Comm | XO Communications |
| Delta Communications | Mark Twain Rural | Seren Innovations | Xspedius |
| Detroit Cellular | Matrix Telecom, Inc. | Sigecom LLC | Yakdin Valley Telephone |
| Dobson Cellular | Max-Tel Communications | Sky Tel Paging | YMAX Communications |
| Egyptian Telephone | McCleod USA | | Ztel Communications |
| Electric Lightwave, Inc. | | | |

**ATTACHMENT 1**                    Last Update: 08/08/2014